**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride (SBN 297557)
ryan@kazlg.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Mark J. Green (SBN 361513)
mark@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Michael Lynn Deis

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**MICHAEL LYNN DEIS,**

Plaintiff,

vs.

**ALLEVIATE FINANCIAL SOLUTIONS LLC; SET FORTH, INC.; SENTRY LEGAL PLAN LLC; and PRIORITY PLUS FINANCIAL LLC;**

Defendants.

**Case No.:**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**

1. **THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. § 1679, *ET SEQ*.**
2. **CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.**
3. **CALIFORNIA FAIR DEBT SETTLEMENT PRACTICES ACT, CAL. CIV. CODE § 1788.300, ET SEQ.**
4. **NEGLIGENCE**
5. **NEGLIGENT MISREPRESENTATION**
6. **FRAUDULENT MISREPRESENTATION**

**JURY TRIAL DEMANDED**

///

///

KAZEROUNI LAW GROUP, APC

## INTRODUCTION

1. MICHAEL LYNN DEIS, ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against ALLEVIATE FINANCIAL SOLUTIONS LLC (hereafter "ALLEVIATE"); SET FORTH, INC. (hereafter "FORTH"); SENTRY LEGAL PLAN LLC (hereafter "SENTRY"); and PRIORITY PLUS FINANCIAL (hereafter "PRIORITY") (collectively "Defendants") for damages, injunctive relief, and any other available legal or equitable remedies, resulting from Defendants' unfair, deceptive, and abusive business practices in their provision of credit repair services.
2. The United States Congress has found that consumers have a vital interest in establishing and maintaining creditworthiness, and in the ability to obtain and use credit. Pursuant to these findings, Congress understood that consumers experiencing problems impacting their credit or creditworthiness may seek assistance from organizations offering to improve such consumers' credit standing. Furthermore, Congress has found that some companies engaged in providing credit repair services have "worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters" through certain advertising and business practices.[1]
3. Pursuant to the aforementioned findings, Congress enacted the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679, *et seq*., to ensure consumers targeted by credit repair services receive the necessary information to make an informed purchasing decision and to protect the public from unfair or deceptive business practices in the advertising and provision of such services by credit repair organizations.

[1] 15 U.S.C. § 1679

4. The CROA broadly defines "credit repair organization" ("CRO") to include entities which sell, provide, or perform (or represent that they will sell, provide, or perform) any service with the express or implied purpose of either (1) "improving any consumer's credit record, credit history, or credit rating," or (2) providing advice or assistance to a consumer with regard to any activity or service which purports to "improv[e] any consumer's credit record, credit history, or credit rating."[2]
5. The Ninth Circuit has confirmed the breadth of the CROA's definition of "credit repair organization." Pursuant to the court's opinion in *Stout v. FreeScore, LLC*, "under the CROA, a person need not actually provide credit repair services to fall within the statutory definition of a credit repair organization. Instead, the person need only *represent* that it can or will sell, provide, or perform a service for the purpose of providing advice or assistance to a consumer with regard to improving a consumer's credit record, credit history, or credit rating."[3]
6. Additionally, similar to other consumer statutes such as the FDCPA, 15 U.S.C. § 1692, *et seq*., a defendant violates the CROA if their conduct "would deceive the least sophisticated consumer."[4]

---

[2] 15 U.S.C. §§ 1679a(3)(A)(i-ii)

[3] *Stout v. FreeScore LLC*, 743 F.3d 680, 685 (9th Cir. 2014). *See also Zimmerman v. Puccio*, 613 F.3d 60, 72 (1st Cir. 2010) ("The language of the Act does not bind the concept of an improved credit record, credit history, or credit rating to the literal alteration ("repair") of an historical record, history, or rating . . . Thus, credit counseling aimed at improving future creditworthy behavior is the quintessential credit repair service.), *Bilbao v. Pac. Insolvency All., LLC*, 2022 U.S. Dist. LEXIS 104559, 8-9 (C.D. Cal. 2022) ("In *Stout*, the Ninth Circuit explicitly rejected the reasoning in *Plattner v. Edge Sols., Inc*. [ . . . ] which found that a debt reduction program was not a credit repair organization, and supported the reasoning in *Reynolds v. Credit Solutions, Inc*. [ . . . ] where a debt settlement company was found to be a credit repair organization based on the plain language of the CROA.").

[4] *Helms v. ConsumerInfo.com, Inc.*, 436 F. Supp. 2d 1220, 1236 (11th Cir. 2005).



KAZEROUNI LAW GROUP, APC

7. The CROA prohibits a variety of false and misleading statements, and fraud, by CROs. CROs may not receive payment before any promised service is "fully performed." Services must be under written contract, which must include detailed descriptions of services and contract performance time. CROs must also provide consumers with separate written disclosure statements describing the consumer's rights before entering into the contract, alongside requirements designed to afford consumer's a clear and obvious method to cancel such contracts. Consumers can sue to recover the greater of the amount paid or actual damages, punitive damages, costs, and attorney's fees for violations.
8. Plaintiff alleges that Defendants operate an elaborate scheme to defraud debtors, and preys on consumers drowning in credit card and unsecured debt. Defendants target consumers like Plaintiff, consumers with significant debts for which they are unable to make minimum payments or who will soon be unable to make such payments and those who have a outstanding concerns with their credit, credit history, or credit worthiness.
9. In response to Defendants' unlawful conduct, Plaintiff seeks an injunction requiring Defendants to cease the unfair, deceptive, and abusive business practices described herein, as well as an award of actual damages and punitive damages for Plaintiff and each of the Class Members, per violation, together with court costs, and reasonable attorneys' fees.
10. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain directly to Plaintiff, which Plaintiff alleges based on personal knowledge.
11. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.
12. All the conduct engaged in by Defendants took place in Los Angeles County, State of California.
13. Unless otherwise stated, Plaintiff alleges any violations by Defendants were

knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such specific violation.

14. Unless otherwise indicated, the use of any Defendants' name in this Complaint, or reference to Defendants as a collective, includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant(s) named.

## JURISDICTION AND VENUE

15. Plaintiff alleges that Defendants violated: (i) the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679, *et seq*.; (ii) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*; (iii) California's Fair Debt Settlement Practices Act, Cal. Civ. Code § 1788.300, *et seq*.; and as a result is also liable for (iv) negligence, (v) negligent misrepresentation, and (vi) intentional misrepresentation.

16. This Court has federal question subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, as Plaintiff alleges violations of a federal statute, the CROA.

17. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 since Plaintiff's federal and state claims arise from the same case or controversy.

18. The Court has personal jurisdiction over Defendants because Defendants conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

19. Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of herein arose within this District; and (2) Defendant conducts significant business in this District.

20. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391 because:



KAZEROUNI LAW GROUP, APC

a. Defendants are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this District;

b. Defendants do substantial business within this District;

c. Defendants are subject to personal jurisdiction in this judicial district because Defendants have availed themselves of the laws and markets within this District; and,

d. the harm to Plaintiff occurred within this District.

## PARTIES

21. Plaintiff is, and at all times relevant herein was, a natural person who resides in Los Angeles County, State of California.

22. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1679a(1).

23. Defendant ALLEVIATE is a limited liability company formed under the laws of the State of California with principal place of business in Irvine, California. Defendant is, and at all times mentioned herein was, a "person" as defined by Cal. Bus. & Prof. Code § 17201 and Cal. Civ. Code § 1788.301(e).

24. Defendant ALLEVIATE displays on the front page of its website an advertisement to consumers to "Settle Your Debts For Less Than What You Owe," the "Contact Us" page of Defendant ALLEVIATE's website prominently states "Contact Us For Debt Relief" at the top of the page, and the first service listed under "Debt Settlement > Your Options" is titled "Debt Relief Services."

25. Thus, Defendant ALLEVIATE is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform, in return for the payment of money, services with the express or implied purpose of improving any consumer's credit record, credit history, or credit rating.

26. Hence, Plaintiff is informed and believes, and thereon alleges, that Defendant ALLEVIATE is a "credit repair organization" as defined by 15 U.S.C. § 1679a(3)(A)(i) and a "debt settlement provider" as defined by Cal. Civ. Code §



KAZEROUNI LAW GROUP, APC

1788.301(a).

27. Defendant FORTH is a stock corporation formed under the laws of the State of Delaware with principal place of business in Schaumberg, Illinois. Defendant FORTH is, and at all times mentioned herein was, a "person" as defined by Cal. Bus. & Prof. Code § 17201 and Cal. Civ. Code § 1788.301(e).

28. On the front page of Defendant FORTH's website, it advertises that "Since our founding in 2009, FORTH has been serving debt relief service providers (DSRPs) and their consumers with robust solutions."

29. Plaintiff contracted with Defendant FORTH as part the debt relief program Plaintiff entered with Defendant ALLEVIATE.

30. Thus, whether express or implied, Defendant FORTH uses any instrumentality of interstate commerce or the mails to sell, provide, or perform, in return for the payment of money or other valuable consideration, the provision of assistance to any consumer with regard to improving a consumer's credit record.

31. Hence, Plaintiff is informed and believes, and thereon alleges, that Defendant FORTH is a "credit repair organization" as defined by 15 U.S.C. § 1679a(3)(A)(ii), a "debt settlement provider" as defined by Cal. Civ. Code § 1788.301(a), and a "payment processor" as defined by Cal. Civ. Code § 1788.301(h).

32. Defendant SENTRY is a limited liability company formed under the laws of the state of Texas with principal place of business in Houston, Texas. Defendant SENTRY is, and at all times mentioned herein was, a "person" as defined by Cal. Bus. & Prof. Code § 17201 and Cal. Civ. Code § 1788.301(e).

33. On the front page of its website, Defendant SENTRY targets consumers who are "currently enrolled in a debt relief program." Furthermore, according to a statement from Defendant SENTRY's CEO on the same website, the company was founded because CEO Craig Camp "saw a huge gap: people enrolled in debt relief programs were doing the hard work, but had zero legal protection when



KAZEROUNI LAW GROUP, APC

creditors came knocking."

34. Plaintiff contracted with Defendant SENTRY as part of the debt relief program Plaintiff entered with Defendant ALLEVIATE.

35. Thus, whether express or implied, Defendant SENTRY uses any instrumentality of interstate commerce or the mails to sell, provide, or perform, in return for the payment of money or other valuable consideration, the provision of assistance to any consumer with regard to improving a consumer's credit record.

36. Hence, Plaintiff is informed and believes, and thereon alleges, that Defendant SENTRY is a "credit repair organization" as defined by 15 U.S.C. § 1679a(3)(A)(ii).

37. Defendant PRIORITY is a limited liability company formed under the laws of the State of Delaware with principal place of business in Costa Mesa, California. Defendant PRIORITY is, and at all times mentioned herein was, a "person" Cal. Bus. & Prof. Code § 17201 and Cal. Civ. Code § 1788.301(e).

38. Defendant PRIORITY holds itself out to the public as a financial services company offering options for debt consolidation.

39. Plaintiff is informed and believes, and thereon alleges, that each Defendant was acting jointly with each other Defendant in an illegal scheme to profit off of an illegal credit repair scheme and that each Defendant was the agent of the others and therefore can be held responsible and is vicariously liable for the conduct of all other Defendants and vice versa, and Plaintiffs incorporates all theories of vicarious liability within this Complaint, including, but not limited to, respondeat superior.

## FACTUAL ALLEGATIONS

40. Sometime prior to 2019, Plaintiff is alleged to have incurred certain financial obligations to several original creditors pursuant to which money, property, or their equivalent were due or owing, or alleged to be due and owing, from a natural person to another person and were therefore debts.



KAZEROUNI LAW GROUP, APC

41. On or about September 11, 2024, Plaintiff contacted Defendant PRIORITY by phone seeking options for debt consolidation. Plaintiff spoke with Defendant PRIORITY's employee named "Belinda."

42. During the conversation, Defendant PRIORITY, through Belinda, told Plaintiff that Plaintiff was not a suitable candidate for debt consolidation, stating that the ratio of Plaintiff's debt to income foreclosed any reasonable options for debt consolidation. Belinda instead recommended that Plaintiff pursue options for debt relief through Defendant ALLEVIATE.

43. Without ending the call or transferring Plaintiff to a different employee, Belinda provided Plaintiff a contract for Defendant ALLEVIATE (the "Alleviate Contract").

44. Furthermore, Belinda, still using her email address associated with Defendant PRIORITY ("bjohnson@priorityplusfunding.com"), forwarded Plaintiff an explanatory welcome packet that bore Defendant ALLEVIATE's logo.

45. In fact, Belinda — using her PRIORITY email account — continued to be a primary point of correspondence between Plaintiff and Defendant ALLEVIATE through at least January 2025.

46. On information and belief, Defendant PRIORITY, through its employee, made a false statement concerning Plaintiff being categorically unsuitable for debt consolidation with the purpose of inducing Plaintiff to pursue Defendant ALLEVIATE's debt relief services.

47. Belinda also counseled Plaintiff to turn off automatic payments on Plaintiff's accounts and change Plaintiff's contact information on file with Plaintiff's creditors such that communications from such creditors were directed to Defendant ALLEVIATE, rather than Plaintiff.

48. Plaintiff did not receive the separate written disclosure required under 15 U.S.C. § 1679c(b), and the "Disclosures" section included in the Alleviate Contract provided to Plaintiff deviated substantially from the text required under 15



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

U.S.C. § 1679c(a).

49. By failing to provide Plaintiff with the required written disclosure separate from any written contract or other agreement or any other written material provided to Plaintiff, Defendant violated 15 U.S.C. §§ 1679c(a) and (b).

50. The Alleviate Contract provided for recurring monthly deposits of $464.39 into a "Custodial Account" "to be used for settlement purposes and for the payment of the Success Fee."

51. By charging or receiving money or other valuable consideration for the performance of a service before such service was fully performed, Defendant ALLEVIATE violated 15 U.S.C. § 1679b(b).

52. By requesting or receiving payment of any fee or consideration for debt settlement services in advance of Defendants renegotiating, settling, reducing, or otherwise altering the terms of at least one debt pursuant to a settlement agreement executed by the consumer, Defendant ALLEVIATE violated Cal. Civ. Code § 1788.302(c)(2).

53. The Alleviate Contract included a generalized "Disclosure of Services" section which provided a non-specific summary of services such as credit counseling, bankruptcy, and debt resolution without language addressing Plaintiff's particular circumstances, or the details of the particular services Defendant ALLEVIATE contracted to perform for Plaintiff.

54. Hence, Defendant ALLEVIATE's contract did not provide a full and detailed description of its guarantees of performance, as required by 15 U.S.C. § 1679d(b)(2)(A) and in violation of the same.

55. Defendant ALLEVIATE's contract provided that:

> The term of this Agreement shall commence on the Effective Date and continue until the successful resolution of the Target Debt or until termination of this Agreement as provided in Section 11. [. . .] If all Target Debts are not settled after 59 months, monthly program deposits will continue until all Client's Target Debts have been settled or Client requests cessation of deposits.

56. Hence, Defendant ALLEVIATE's contract failed to give the date by which the performance of the services will be complete or the length of the period necessary to perform such services, instead giving a vague and potentially open-ended term of months, in violation of the requirements of 15 U.S.C. § 1679d(b)(2)(B).

57. Furthermore, the Alleviate Contract did not include the total amount of all payments to be made by Plaintiff to Defendant ALLEVIATE, in violation of 15 U.S.C. § 1679d(b)(1).

58. To the extent the Alleviate Contract failed to comply with 15 U.S.C. § 1679d, including but not limited to the above-cited provisions, the Alleviate Contract is void and unenforceable pursuant to 15 U.S.C. § 1679f(c).

59. Furthermore, Defendant ALLEVIATE counseled Plaintiff to refrain from paying her debts, including any interest. Defendant ALLEVIATE assured Plaintiff that the cost of settling her debts would be lower than the accumulated unpaid interest and late fees.

60. By advising Plaintiff that it was advantageous to refrain from making payments on her debts on the unwarranted expectation that Defendant ALLEVIATE would negotiate a fantastically generous settlement, Defendant ALLEVIATE made an untrue or misleading representation of its services, in violation of 15 U.S.C. § 1679b(a)(3).

61. Additionally, Plaintiff reached out to Defendant ALLEVIATE and/or Defendant PRIORITY's employee Belinda seeking guidance upon receiving a "Notice of Final Demand and Right to Cure" from SoFi Bank on or about January 8, 2025 owing to lasting delinquencies on the account.

62. Plaintiff's account would not have lapsed into such serious delinquency but for Defendant ALLEVIATE advising her to refrain from making payments.

63. Concerned about the Notice, Plaintiff asked Belinda "I'm starting to get really worried. Can you or someone confirm that things are moving forward? I read

KAZEROUNI LAW GROUP, APC

some concerning reviews of your company, and now I'm just worried I've ruined my credit for nothing."

64. Defendants, through Belinda, counseled Plaintiff, "Don't worry, this is completely normal and part of the process. The emails you're receiving are expected as Alleviate works on negotiating new terms. Please disregard them for now."

65. By advising Plaintiff that it was advantageous to ignore communications from Plaintiff's creditors, Defendant ALLEVIATE made an untrue or misleading representation of its services, in violation of 15 U.S.C. § 1679b(a)(3).

66. Furthermore, Defendant ALLEVIATE required Plaintiff to enter into additional contracts with third-parties as a condition of Defendant ALLEVIATE's credit repair service.

67. Specifically, Plaintiff was required to contract with Defendant FORTH and Defendant SENTRY.

68. Indeed, Defendant FORTH in particular was so intimately involved with Defendant ALLEVIATE that Plaintiff received, from Defendant FORTH's email "noreply@setforth.com," a further copy of Defendant ALLEVIATE's welcome packet on or about September 15, 2024.

69. Plaintiff's contract with Defendant FORTH (the "Forth Contract") required Plaintiff to pay a setup fee of $10.95 and subsequent monthly fees of $10.95 to Defendant FORTH for the maintenance of the "Custodial Account" mentioned in the Alleviate Contract. Specifically, the Forth Contract provided that, "an account will be established for the purpose of implementing a written debt settlement program that You [Plaintiff] have approved with a third-party Debt Relief Service Provider."

70. Plaintiff did not receive the separate written disclosure required under 15 U.S.C. § 1679c(a). Hence, Defendant FORTH violated 15 U.S.C. § 1679.

71. By charging or receiving money or other valuable consideration for the

KAZEROUNI LAW GROUP, APC

performance of a service before such service was fully performed, Defendant FORTH violated 15 U.S.C. § 1679b(b).

72. By requesting or receiving payment of any fee or consideration for debt settlement services in advance of Defendants renegotiating, settling, reducing, or otherwise altering the terms of at least one debt pursuant to a settlement agreement executed by the consumer, Defendant FORTH violated Cal. Civ. Code § 1788.302(c)(2).

73. To the extent Defendant FORTH, acting as a payment processor, facilitated any distribution of payment for debt settlement services before the requirements of Cal. Civ. Code § 1788.302(c)(2) were met, Defendant FORTH violated Cal. Civ. Code § 1788.302(c)(3).

74. The Forth Contract did not include the total amount of all payments to be made by Plaintiff to Defendant FORTH, in violation of 15 U.S.C. § 1679d(b)(1).

75. The Forth Contract did not include a conspicuous statement in bold type face in immediate proximity to the space reserved for the consumer's signature on the contract apprising Plaintiff of her right to cancel the Forth Contract, as required by 15 U.S.C. § 1679d(b)(4) and in violation of the same.

76. To the extent the Forth Contract did not comply with 15 U.S.C. § 1679d(b), including but not limited to the specific provisions cited above, the Forth Contract is void pursuant to 15 U.S.C. § 1679f(c).

77. Defendant FORTH did not provide Plaintiff with a cancellation form in duplicate, as required by 15 U.S.C. § 1679e(c) and in violation of the same.

78. Plaintiff was further required to contract with Defendant SENTRY as a condition of Defendant ALLEVIATE's program.

79. Plaintiff's contract with Defendant SENTRY (the "Sentry Contract") required Plaintiff to "be actively enrolled in an approved debt settlement program with Alleviate Financial Solutions" and further required Plaintiff to pay a $250.00 setup fee and a $39.99 monthly membership fee.

KAZEROUNI LAW GROUP, APC

80. Defendant SENTRY also required Plaintiff to bear the cost of purported filing fees. For instance, fees associated with the filing of an Answer totaling $602.50 were deducted from Plaintiff's Forth account on or about August 18, 2025.

81. Plaintiff did not receive the separate written disclosure required under 15 U.S.C. § 1679c(a). Hence, Defendant SENTRY violated 15 U.S.C. § 1679.

82. Defendant SENTRY did not provide Plaintiff with a cancellation form in duplicate, as required by 15 U.S.C. § 1679e(c) and in violation of the same.

83. The Sentry Contract purported to confer the following benefits:

> 2. **Benefits of Legal Plan** - The Legal Plan provides the following benefits (the "Plan Benefits"):
>
> a. **Attorney Fees** - The Legal Plan will arrange attorney representation and fully pay Plan Member's attorney's fees for defense of any debt collection litigation action brought against the Plan Member for any accounts actively enrolled in Plan Member's Debt Settlement Program.
>
> b. **Creditor Letters** - The Plan Member will be entitled to have up to 1 creditor letter sent on their behalf every month per account enrolled in their debt settlement program.
>
> c. **Consumer Protection Services** - The Plan Member will be entitled to consumer protection services including the identification of FDCPA, TCPA, and FCRA violations. In the event that an FDCPA, TCPA, or FCRA violation is discovered the prosecution of those violations will be handled on a contingency basis.
>
> d. **Discounts on Other Legal Matters** - In the event that Plan Member has a legal issue that does not qualify for coverage under the Legal Plan, SENTRY will attempt to refer the Plan Member to a member of the SENTRY attorney network for a complimentary consultation. Should a SENTRY Network attorney take the case, the Plan Member will be given a 25% discount off the SENTRY Network attorney's standard hourly or contingency rate.

84. By charging or receiving money or other valuable consideration for the performance of a service before such service was fully performed, Defendant SENTRY violated 15 U.S.C. § 1679b(b).

85. The Sentry Contract did not include the total amount of all payments to be made by Plaintiff to Defendant SENTRY, in violation of 15 U.S.C. § 1679d(b)(1).

KAZEROUNI LAW GROUP, APC

86. The Sentry Contract did not include a conspicuous statement in bold type face in immediate proximity to the space reserved for the consumer's signature on the contract apprising Plaintiff of her right to cancel the Sentry Contract, as required by and in violation of 15 U.S.C. § 1679d(b)(4).

87. To the extent the Sentry Contract did not comply with 15 U.S.C. § 1679d(b), including but not limited to the specific provisions cited above, the Sentry Contract is void pursuant to 15 U.S.C. § 1679f(c).

88. Plaintiff has suffered actual damages as a result of these actions, omissions, and inaction by Defendants in the form of, damage to credit, loss of opportunity to benefit from credit, loss of money, invasion of privacy by having to discuss this problem with others, personal embarrassment related to disclosure of the problem and to the consequences from it, loss of personal reputation in the eyes of others, loss of productive time which was instead spent trying to fix the problem, nausea, and feelings of fear, anxiety, hopelessness, anger, persecution, emotional distress, frustration, upset, humiliation, and embarrassment, amongst other negative emotions. Indeed, in order to repair the damage done to her finances as a result of Defendants' above-described violations, Plaintiff has had to incur further debt.

## CLASS ALLEGATIONS

89. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated (the "Class").

90. Plaintiff seeks to represent, and is a member of, the Class consisting of:

> All persons within the United States who contracted with one or all Defendants for the purposes of improving such person's credit record, credit history, or credit rating and who paid or were charged valuable consideration pursuant to said contract prior to one or all Defendants fully performing such services, within the five years prior to the filing of Plaintiff's Complaint.

91. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes there are more

than forty (40) such members, potentially numbering in the hundreds or thousands. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

92. Plaintiff and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants charged the Class valuable consideration for credit repair services in advance of fully performing such services, Defendants failed to provide the required written disclosure to the Class separate from and in advance of the signing of any contract for credit repair services, and/or Defendants provided contracts to the Class which did not comply with the requirements of the CROA.

93. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

94. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agents' records.

95. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members, including the following:

a. Whether, within the five years prior to the filing of this Complaint, Defendants wrongfully charged Plaintiff and the Class members valuable consideration for credit repair services in advance to fully performing such services;

b. Whether, within the five years prior to the filing of this Complaint,



KAZEROUNI LAW GROUP, APC

Defendants' purported contracts with Plaintiff and the Class members failed to comply with the requirements of the CROA;

c. Whether, within the five years prior to the filing of this Complaint, Defendants made or used any untrue or misleading representations of Defendants' services in dealing with Plaintiff or the Class members;

d. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violations; and

e. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

96. As a person who contracted for credit repair services with Defendants, who was charged valuable consideration by Defendants in advance of Defendants fully performing those services, who was presented with and signed a contract that violates the CROA, and who was subject to misleading representations by at least one Defendant, Plaintiff is asserting claims that are typical of the Class.

97. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

98. As a result of the Defendants' unlawful and wrongful conduct, Plaintiff and the members of the Class have all suffered irreparable harm and invasion of a legally protected interest in establishing and maintaining creditworthiness and credit standing, which is specifically addressed and protected by the CROA. Absent a class action, the Class will continue to be damaged and face irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct.

99. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Credit Repair Organizations Act.

100. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal and California law.



KAZEROUNI LAW GROUP, APC

101. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**

**VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT,**

**15 U.S.C. § 1679, *et seq*.**

**(Against Defendants Alleviate, Forth, & Sentry)**

102. Plaintiff repeats, re-alleges, and incorporates by reference, all above paragraphs of this Complaint as though fully stated herein.

103. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the CROA, including but not limited to each and every one of the above-cited provisions of the CROA, 15 U.S.C. § 1679.

104. As a result of each and every violation of the CROA, Plaintiff and members of the Class are entitled to: actual damages as the Court may allow pursuant to 15 U.S.C. § 1679g(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1679g(a)(2)(B); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1679g(a)(3).

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW,**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

**(Against Defendants Alleviate, Forth, & Sentry)**

105. Plaintiff repeats, re-alleges, and incorporates by reference, all above paragraphs as though fully stated herein.

106. The UCL defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue, or misleading" advertising. Cal. Bus. & Prof. Code § 17200.



KAZEROUNI LAW GROUP, APC

107. The UCL imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – but only that such practices occurred.

**“Unfair” Prong**

108. A business practice is “unfair” under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practices against the gravity of the harm to the alleged victims.

109. Defendants’ actions constitute “unfair” business practices because, as alleged above, Defendants contracted to provide credit repair services under terms and circumstances that misled Plaintiff and the Class members, thus constituting a false, deceptive, or misleading practice.

110. The harm to Plaintiff grossly outweighs the utility of Defendants’ practices. Indeed, Plaintiff alleges that there is no utility to Defendants’ conduct that justifies the practices alleged herein.

“Unlawful” Prong

111. A business act or practice is “unlawful” under the UCL if it violates any other law or regulation.

112. Defendants violated the plain language of the CROA by charging Plaintiff and the Class members for services that had not been fully performed, by contracting under terms and circumstances that violate the requirements of CROA, and by making misleading representations about Defendants’ services.

113. Defendants also violated the FDSPA by charging Plaintiff and the Class Members in advance of performing any services, and for misrepresentations of the services offered.

114. The violation of any law constitutes an “unlawful” business practice under the UCL.



KAZEROUNI LAW GROUP, APC

115. Defendants' practices, as set forth herein, are unfair and unlawful business practices within the meaning of the UCL.

116. As a result, Plaintiff is entitled to equitable relief pursuant to Cal. Bus. Prof. Code § 17203.

## THIRD CAUSE OF ACTION

**CALIFORNIA FAIR DEBT SETTLEMENT PRACTICES ACT**

**Cal. Civ. Code § 1788.300, *et seq*.**

**(Against Defendants Alleviate & Forth)**

117. Plaintiff repeats, re-alleges, and incorporates by reference, all above paragraphs as though fully stated herein.

118. The foregoing acts and omissions constitute numerous and multiple violations of the California Fair Debt Settlement Practices Act ("FDSPA").

119. Defendants ALLEVIATE and FORTH violated the FDSPA by requesting and receiving payment from Plaintiff prior to performing any promised service. Cal. Civ. Code § 1788.302(c)(2).

120. Defendants' program purports to convey benefits that are inadequately described, lacking transparency, and leading consumers to believe that Defendant's services will resolve their debts, which may not be the case. Cal. Civ. Code § 1788.302(b)(2)(D). Further, Defendants violated the FDSPA by failing to provide Plaintiff with timely, factual, and understandable updates regarding the status of her debts.

121. As a result of each and every violation of the FDSPA, Plaintiff requests an amount equivalent to three times the amount of actual damages, which shall include damages for the amount of a judgment issued in connection with an abusive litigation, and any other expenses, costs, or reasonable attorney's fees incurred in connection with this action pursuant to Cal. Civ. Code § 1788.305.



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

**FOURTH CAUSE OF ACTION**

**NEGLIGENCE**

**(Against All Defendants)**

122. Plaintiff repeats, re-alleges, and incorporates by reference, all above paragraphs as though fully stated herein.

123. Plaintiff believes and thereon alleges that Defendants owed various duties to Plaintiff pursuant to CROA; Cal. Bus. & Prof. Code § 17200, *et seq*.; and Cal. Civ. Code § 1788.300, *et seq*. Specifically, Defendants owed a duty to Plaintiff with regard to the manner in which Defendants operate their debt relief companies, associated debt relief programs, and the coordination thereof between each of the Defendants.

124. Defendants breached Defendants' duties by engaging in the acts herein described.

125. Plaintiff asserts that Defendants are the actual and legal cause of Plaintiff's injuries.

126. Plaintiff believes and thereon alleges that, as a proximate result of Defendants' negligence, Plaintiff has suffered severe emotional distress.

127. Due to the egregious violations herein alleged, Plaintiff asserts that Defendants breached Defendants' duties in an oppressive, malicious, despicable, gross, and wantonly negligent manner. As such, said conduct establishes Defendants' conscious disregard for Plaintiff's rights and entitles Plaintiff to recover punitive damages.

**FIFTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(Against All Defendants)**

128. Plaintiff repeats, re-alleges, and incorporates by reference, all above paragraphs as though fully stated herein.

KAZEROUNI LAW GROUP, APC

129. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants each made representations to Plaintiff that misrepresented the quality of the services offered, the benefits that would be realized by Plaintiff, and/or the desirability of credit repair services as an alternative to debt consolidation.

130. Defendants, at all times relevant, had a pecuniary interest in the transaction.

131. Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendant did not exercise reasonable car or competence in obtaining or communicating the information regarding Defendant's credit repair services.

## SIXTH CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

## (Against All Defendants)

132. Plaintiff repeats, re-alleges, and incorporates by reference, all above paragraphs as though fully stated herein.

133. Plaintiff is informed and believes, and thereon alleges, that Defendants intentionally and willfully misrepresented the quality of the services offered and benefits that would be realized by Plaintiff.

134. Said representations were material misrepresentations.

135. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants made the false representations to Plaintiff with full knowledge of their falsity.

136. Plaintiff entered into contracts with Defendants based solely on the representations made by Defendants. Therefore, Plaintiff is informed and believes, and thereon alleges, that at all relevant times Defendants intended that Plaintiff rely on the representations made by Defendants.

137. Plaintiff did in fact rely on the misrepresentations by Defendants, which led to Plaintiff suffering harm and damages as a result.

KAZEROUNI LAW GROUP, APC

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants, and Plaintiff be awarded damages from Defendants, as follows:

- An award of actual damages pursuant to 15 U.S.C. § 1679g(a)(1);
- An award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1679g(a)(2)(B);
- Costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1679g(a)(3);
- For equitable and injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203;
- Appropriate civil penalties pursuant to Cal Bus. & Prof. Code § 17206;
- An award of actual damages pursuant to Cal. Civ. Code § 1788.305(b)(1);
- As a result of each and every violation of Cal. Civ. Code § 1788.300, *et seq.*, an award of statutory damages not less than one thousand dollars ($1000) and no more than five thousand dollars ($5000) per violation of Cal. Civ. Code § 1788.300 *et seq.*;
- Injunctive relief pursuant to Cal. Civ. Code § 1788.305(b)(2);
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.305(c) and the common fund doctrine;
- General damages subject to proof;
- Special damages subject to proof;
- Punitive damages according to proof;
- That Defendants be enjoined from continuing the wrongful conduct herein alleged and required to comply with all applicable laws; and
- Any and all other relief the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

138. Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

Dated: October 24, 2025

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Ryan L. McBride, Esq.*
Ryan L. McBride, Esq.
*Attorney for Plaintiff*